## A03A2176. JOINES v. THE STATE.
(591 SE2d 454)

JOHNSON, Presiding Judge.

A Peach County jury found Joseph T. Joines guilty of three of the four counts of child molestation for which he was indicted.[1] On appeal, Joines claims the trial court erred in (i) denying his motion to

---

[26] *Wooten v. State*, 262 Ga. 876, 878 (2) (426 SE2d 852) (1993).

[27] *Henderson v. State*, 272 Ga. 621, 623 (6) (532 SE2d 398) (2000).

[1] Joines was found guilty of incidents of molestation on April 26, 2001, May 3, 2001, and May 4, 2001. He was found not guilty of an act alleged to have occurred between March 1, 2001, and April 26, 2001.

suppress evidence found on his classroom computer, (ii) admitting evidence of alleged pornography sites which had been accessed from his classroom computer, (iii) allowing an officer to testify as to the victim's statements in a pretrial interview, (iv) sustaining the state's objections to defense counsel's closing argument, and (v) in its jury charges. We find no error and affirm.

Viewed in a light most favorable to support the verdict, the evidence shows that Joines was a teacher and L. P., the 15-year-old victim, was a student at Fort Valley Middle School. L. P. testified that during March and April 2001, Joines touched her breasts and buttocks. Joines showed L. P. a picture of a penis on the classroom computer. Another student saw Joines put his hand between L. P.'s legs and on her buttocks. On April 26, 2001, L. P. asked Joines for a ride home. Joines drove her to a cemetery where he kissed her and touched her breasts. On May 3, 2001, Joines again drove with L. P. to the cemetery where they had sexual intercourse. He used a condom from a gold box in his glove compartment. Joines and L. P. also had sexual intercourse at the cemetery on May 4, 2001.

The school principal, Virginia Dixon, received information which prompted her to investigate Joines's classroom computer. Dixon accessed the computer using her name and administrative password, and when she logged on the computer screen showed what Dixon described as a Playboy Internet site. She then asked Charlie Waters, the school technical expert, to investigate what was on the computer's hard drive. Dixon also called L. P. into her office to ask her about Joines. L. P. initially denied that anything improper had taken place, but on the third interview L. P. said that she had had sex with Joines. On May 11, 2001, a Georgia Bureau of Investigation (GBI) officer searched Joines's truck pursuant to a warrant and found an opened box of condoms in the glove compartment.

1. Joines claims the trial court erred in denying his motion to suppress evidence found on his computer because it was seized without consent or a search warrant. We disagree.

The trial court denied Joines's motion to suppress because he had no expectation of privacy in a publicly owned computer located in the classroom. Joines claims a privacy interest in his computer files based on his possessory interest in the computer. As a threshold issue, however, it appears that the exclusionary rule does not apply. Dixon, the school principal, logged into the computer in Joines's classroom and then asked Waters, another school employee, to determine what was on the computer hard drive. "The application of the exclusionary rule has never been sanctioned by the [federal] Supreme Court in any context other than a Fourth Amendment vio-

lation by law enforcement officers."[2] School officials are not generally considered to be law enforcement officers. "[P]ublic school officials, plainly are state officers whose action is state action bringing the Fourth Amendment into play; but they are not state law enforcement officials, with respect to whom the exclusionary rule is applied."[3]

Joines complains that the trial court did not conduct an inquiry into whether Dixon was acting on behalf of law enforcement personnel.[4] Evidence shows, however, that the information which caused Dixon to log into Joines's computer was received from another teacher on "Family and Friend Day," and there is nothing in the record that demonstrates or implies she acted as a law enforcement agent or on law enforcement's behalf in logging into the computer and ordering the search of the hard drive. It follows that Joines could not suppress the evidence stemming from Dixon's search. The trial court did not err in denying his motion to suppress.

2. Joines contends the trial court erred in admitting evidence of alleged pornography sites which had been accessed from his classroom computer. We find no error.

Joines filed a motion in limine to prevent witnesses from referring to the printout prepared by Waters showing the Internet sites that had been accessed from the computer in Joines's classroom. Joines contends that the evidence was highly prejudicial and irrelevant because it included pornography sites. At the hearing on the motion, the state contended that this information was relevant because evidence would show that Joines had shown pornography to the victim on the classroom computer. The trial court ruled that just because the material was on the computer did not make it relevant, but if testimony linked the material with the victim, then "I think you should make an objection at the proper time." Defense counsel said he would object "at that time."

Waters subsequently testified that Playboy, Sexhound, and Sextracker Internet sites had been accessed from the classroom computer. Waters indicated that Sextracker.com was a sex-related or pornography site. At that point, defense counsel initiated a bench conference. He moved to strike the testimony regarding these "sex tracker web sites." Defense counsel also admitted that "since I didn't know where [the testimony] was going, I maybe waited a little long to object." The trial court granted Joines's motion to strike. The trial

---

[2] (Citations and punctuation omitted.) *Jordan v. State*, 211 Ga. App. 86, 91 (1) (c) (438 SE2d 371) (1993).

[3] *State v. Young*, 234 Ga. 488, 493-494 (2) (216 SE2d 586) (1975).

[4] See id. at 498 (action by school officials will pass constitutional muster only if those officials are acting in their proper capacity and the search is free of involvement by law enforcement personnel).

court then charged the jury that testimony about the contents of the computer should be disregarded and not considered by them for any purpose.

Joines argues that he took appropriate measures to prevent the jury from hearing the prejudicial evidence of pornography on his classroom computer by filing a motion in limine to exclude it, but that the evidence was heard by the jury and the harm done despite the trial court's curative instruction. We conclude that the trial court did not err in this process. If the jury heard prejudicial evidence it was because defense counsel failed to object. The trial court granted Joines's motion to strike and gave curative instructions to the jury at defense counsel's request and without objection. "A litigant cannot submit to a ruling, acquiesce in the ruling, and still complain of same."[5]

3. (a) Joines claims the trial court erred in allowing Special Agent John Goodpastor to testify about his pretrial interview with L. P. We disagree.

Goodpastor was the GBI agent who investigated the case. The prosecutor asked Goodpastor if L. P. told him of any specific dates during Goodpastor's interview with L. P. Goodpastor responded that

> She could — she didn't tell me any specific dates. She told me about four incidents. And she would recall by "a week ago today" exactly in a Thursday. And then it was, the second incident was the following next day. And the incident after that was two weeks ago from that Thursday. And another incident was before spring break of 2001.

Defense counsel objected to the testimony because it was hearsay. The trial court overruled the objection.

The issue is whether the challenged hearsay testimony was an admissible prior consistent statement. A prior consistent statement is admissible only where (1) the veracity of a witness's trial testimony has been placed in issue at trial; (2) the witness is present at trial; and (3) the witness is available for cross-examination.[6] Moreover, "a witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination."[7] And although L. P.'s general credibility

---

[5] (Citation and punctuation omitted.) *Morris v. State*, 226 Ga. App. 535, 539 (3) (488 SE2d 685) (1997).

[6] *Phillips v. State*, 241 Ga. App. 764 (527 SE2d 604) (2000). See also *Alvarado v. State*, 257 Ga. App. 746, 748-749 (3) (572 SE2d 18) (2002).

[7] *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998).

was at issue, "prior consistent statements are not admissible to bolster general credibility."[8]

On cross-examination, L. P. denied having sexual intercourse with Joines on May 4 even though she had testified on direct that she did have sexual intercourse with Joines on May 4. She also testified on cross-examination that she had sex with Joines on April 26, but on direct she testified that she did not have sexual intercourse on April 26, once it was clarified that April 26 was the day she first went with Joines to the cemetery. The point of the cross-examination was that L. P. had fabricated dates, and defense counsel argued in closing that the prosecutor had to "coach" L. P. about the dates. Goodpastor's testimony addresses what L. P. told him about the timing of the alleged incidents. The challenged testimony shows that L. P.'s prior statement of what occurred was consistent with the dates she testified to on direct and which were directly challenged during cross-examination. Goodpastor's testimony was limited to the credibility issue raised in L. P.'s cross-examination and was not a bolstering of L. P.'s general credibility. The trial court did not err in overruling Joines's hearsay objection.

(b) Joines also claims that the trial court erred in allowing Goodpastor to testify that "the dates he came up with" were consistent with what L. P. told him in their interview. This is not a fair characterization of Goodpastor's testimony. The prosecutor asked, "What you testified, is that consistent with what she told you?" Goodpastor answered yes and there was no objection. Because defense counsel did not object, Joines's claim of error in connection with that testimony is waived for appeal.[9]

4. During closing argument defense counsel made the following argument:

> You know, [the prosecutor] has spent a lot of time talking about [the condoms]. But, you know, what he overlooks is this very simple fact. You know, she identifies the gold box. Well, obviously when she was talking to Mr. Goodpastor, you know, he said is this the box? Oh yeah, this is it. So then she remembers it's a gold box.

The state objected to the argument because there was no evidence that Goodpastor showed the box of condoms to L. P., and the trial court sustained the objection. Joines claims the trial court erred in sustaining the state's objection because his counsel's argument was

---

[8] Id. at 320, n. 20.
[9] *Baker v. State*, 230 Ga. App. 813, 816-817 (5) (498 SE2d 290) (1998).

based on an inference that could be drawn from the evidence. We disagree.

> The permissible scope of closing argument is vast: counsel may draw from the evidence properly before the factfinder *any inference apparently reasonable and legitimate*. Counsel should be allowed considerable latitude of speech; and so long as extraneous facts are not injected or improper language used, the trial judge should not interfere. Upon the facts in the record, and upon the deductions the attorney may choose to draw therefrom, an attorney may make almost any form of argument the attorney desires.[10]

Joines points to evidence showing that L. P. told Goodpastor that Joines used a condom on both occasions that they had sexual intercourse. During direct, L. P. maintained that Joines used a condom only during the first sex act. Joines also contends that L. P.'s confusion as to the dates indicates she was coached by Goodpastor as to those dates. Joines then contends that because (1) L. P. was coached as to the dates, and (2) she changed her story about the condoms, that it can be reasonably inferred that Goodpastor had shown L. P. the box of condoms. However, whether Joines used one or two condoms, L. P. would have been able to see the box, so even though her story may have changed as to the number of condoms used, it cannot be inferred that her ability to recognize the box came from an outside source, such as Goodpastor. And while it might be inferred that Goodpastor helped L. P. convert her recollections into actual dates, showing L. P. a box of condoms would not have helped in that process. Defense counsel's argument that Goodpastor showed L. P. the box of condoms was unreasonable and unfair, and the trial court did not err in sustaining the state's objection.

5. Joines claims the trial court erred in sustaining the state's objection to defense counsel's argument that "no one should have to suffer the consequences that may arise from a conviction of these charges." We disagree. "It is not error to preclude counsel from arguing, during closing argument, the consequences of the jury's verdict."[11]

6. Joines contends the trial court erred by reading the definition of the crime of child molestation twice during the jury charge without request from counsel or the jury. The rule is that "[a] mere repetition of a principle of law, while unnecessary, will not work a reversal

---

[10] (Emphasis supplied.) *Coppolla v. State*, 238 Ga. App. 567, 570 (1) (519 SE2d 494) (1999). See also *Geiger v. State*, 258 Ga. App. 57, 61 (3) (c) (573 SE2d 85) (2002).

[11] *Whisnant v. State*, 178 Ga. App. 742, 744 (2) (344 SE2d 536) (1986).

unless it appears from the charge as a whole that there was such undue emphasis as to result in an unfair statement of the law in relation to the defendant's rights."[12] We conclude that the trial court's charge as a whole did not result in an unfair statement of the law.

7. Joines claims the trial court erred by failing to give his requested Charge No. 12 in its entirety. Joines asked for the following charge:

> I charge you that counsel for the Defendant not only has the right but the plain duty towards his client to fully investigate the case and to interview any person who might be able to assist him in ascertaining the truth concerning the event in controversy. Witnesses are not parties and should not be partisans. They do not belong to either side of the controversy.

The trial court did not use the last two sentences of the requested charge in its jury instructions. Joines contends that the omitted language was important to his theory of the case because the brother of the victim asked a witness not to give an interview to defense counsel, which in turn supported the defense's contention that the victim and her family perpetuated the allegations of molestation in the hopes of pursuing a civil case against the Board of Education. We conclude that the omitted language was adequately covered by the charge on credibility of witnesses and so the trial court's failure to charge the requested language is not error. "Where the requested instruction is at least minimally covered adequately by the charge given on credibility of witnesses, the court's failure to charge in the language requested does not constitute reversible error."[13]

*Judgment affirmed. Eldridge and Mikell, JJ., concur.*

DECIDED DECEMBER 4, 2003 — 

*Laura D. Hogue*, for appellant.

*Howard Z. Simms, District Attorney, Thomas C. Woody II, Assistant District Attorney*, for appellee.

---

[12] *Brown v. State*, 142 Ga. App. 247, 248 (2) (235 SE2d 671) (1977).
[13] *Nobles v. State*, 201 Ga. App. 483, 488 (10) (411 SE2d 294) (1991).